Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | DAVID H. COAR | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2001 C 0483 | **DATE** | April 2, 2001 |
| **CASE TITLE** | Miles Barnes (#N-33377) v. Dwayne A. Clark, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff is granted leave to file in forma pauperis, and this action is dismissed, terminating case. The trust fund officer at plaintiff's place of incarceration shall deduct $11.67 from plaintiff's account as an initial partial filing fee. Thereafter, the trust fund officer at the correctional facility where he is confined shall collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. All payments shall be forwarded to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Fiscal Dept., each time the amount in the account exceeds $10 until the full $150 filing fee is paid. All payments shall identify plaintiff's name and the case number of this action. The clerk shall send a copy of this order to the trust fund officer at Stateville Correctional Center.

(11) ■ For further detail see order attached to the original minute order.

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | 4/3/01 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | C.S. docketing deputy initials | 8 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 01 APR -2 AM 10: 31 | date mailed notice | |
| KS (slc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 0 3 2001

MILES BARNES (#N-33377), )
)
    Plaintiff, )
) No. 2001 C 0483
    v. )
) Judge David H. Coar
DWAYNE A. CLARK, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Miles Barnes, an inmate in the custody of the Illinois Department of Corrections (IDOC) at Stateville Correctional Center, has filed this pro se civil rights action under 42 U.S.C. § 1983 against numerous IDOC employees. Barnes is granted leave to proceed in forma pauperis. The Prison Litigation Reform Act of 1996 (PLRA), requires Barnes to pay the entire $150 filing fee in installments. The court is assessing an initial partial filing fee and directing the collection of installment payments as required by 28 U.S.C. § 1915(b)(1) by separate order.

Pursuant to 28 U.S.C. § 1915A, another provision of the PLRA, the court is required to review complaints filed by prisoners against officers or employees of governmental entities and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. The court is directed, in effect, to make and rule on its own motion to dismiss the complaint prior to service.[1/]

## LEGAL STANDARD

In determining whether a complaint states a claim for purposes of 28 U.S.C. § 1915A, the court applies the standards applied in addressing an adversarial motion to dismiss under Rule

---

[1/] Because defendants are not parties to a suit before being served with process, see *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995), the rulings set forth in this order are not binding upon them.

12(b)(6). A motion to dismiss should not be granted unless the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court assumes that the alleged facts are true and draws every reasonable inference in the plaintiff's favor. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). A pro se complaint is held to less stringent standards than a complaint drafted by an attorney, *id.* at 845-46, and for a pro se plaintiff the court considers the allegations contained in all documents filed with the court. *See Gutierrez v. Peters*, 111 F.3d 1364, 1367 & n. 2 (7th Cir. 1997); *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). However, a *pro se* plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Henderson*, 196 F.3d at 846; *Gutierrez*, 111 F.3d at 1374.

## DEFENDANTS

Barnes' central claim is that he was wrongly charged with disciplinary violations on September 10, 1998, and convicted by Stateville's Adjustment Committee on September 15, 1998, resulting in his confinement in disciplinary segregation between September 10, 1998 and October 9, 1998. Barnes alleges that he was falsely charged and convicted in retaliation for filing grievances and civil suits and for testifying on behalf of another inmate, Jeff Musgrove. Barnes names as defendants the following IDOC officers and administrators:

1. Correctional officers Lt. King, L. Cole-Carter and H. Eskridge, who charged him with the disciplinary violations;

2. Officer Marcus McBride,[2] who allegedly conspired with the above;

3. Rosa Espinosa, the hearing investigator who failed to investigate the charges and approved them;

4. Adrienne Johnson, Margritte Thompson and Shirley Lewis, members of the Stateville Adjustment Committee who found Barnes guilty;

---

[2] Barnes spells defendant's name "McBryde" in the complaint, but it appears from the exhibits that it is properly spelled "McBride."

5.  Dwayne Clark, the former warden of Stateville who approved the recommended punishment, denied Barnes' grievance protesting it, and did not respond to Barnes' complaints concerning conditions in his segregation cell;

6.  Georgia Schonauer, the grievance officer who denied Barnes' grievance protesting the disciplinary conviction;

7.  Leora Harry and Phil Roos, members of IDOC's Administrative Review Board who refused to overturn the disciplinary conviction;

8.  Acting Sergeant Ewing and Captain Morgan, who denied Barnes cleaning supplies, a clean mattress, a blanket and a coat in his segregation cell, denied him the telephone call to which IDOC regulations entitled him, and would not let him have envelopes; and

9.  Sergeant Davis and Lieutenant Price for compelling Barnes to sign a false acknowledgment that he had received all of his personal property on pain of being returned to segregation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The PLRA requires prisoners to exhaust available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Barnes has properly exhausted his claim that he was wrongly charged and convicted of disciplinary violations. Barnes has furnished as exhibits the disciplinary reports charging him with the violations, the Adjustment Committee summaries, and the Administrative Review Board recommendation dated January 21, 1999 that his grievance be denied.[3] Claims relating to conditions in his segregation cell and deprivation of personal property have not been exhausted and must be dismissed.

## RETALIATORY PUNISHMENT

### (A) Charging officers

Although Barnes has exhausted his claims arising from the allegedly retaliatory disciplinary convictions, he has no federal constitutional claim with respect to his disciplinary conviction as such. Barnes' punishment, a month in disciplinary segregation, reduction to C grade for two

---

[3] Illinois' two-year statute of limitations for personal injury claims, 735 ILCS 5/13-202, governs § 1983 claims arising in Illinois. *Kelly v. City of Chicago*, 4 F.3d 509, 510 (7th Cir. 1993). Because Barnes could not have brought suit before exhausting administrative remedies, these claims are timely.

3

months, and 3 months commissary denial, is constitutionally insignificant. The Supreme Court held in *Sandin v. Conner*, 515 U.S. 472 (1995), that even when state law or regulations specify procedures to be followed in disciplining a prisoner, no constitutionally protected liberty interest will be created unless the punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court stated that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," *id.* at 485, and held that "[respondent's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," *id.* at 486. The Seventh Circuit has held that confinement in segregation at Stateville is not an "atypical and significant hardship." *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997); *Williams v. Ramos*, 71 F.3d 1246, 1249-50 (7th Cir. 1995). As far as the Constitution is concerned, segregation is part of prison life and may be inflicted without due process of law. The same is true for loss of privileges. *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996).

Barnes alleges, however, that these penalties were imposed upon him in retaliation for filing grievances and lawsuits, implicating his First Amendment right to seek redress of grievances. Acts that are otherwise permissible are impermissible if done for retaliatory reasons, and Barnes need not have a protected liberty or property interest to complain of discriminatory or retaliatory treatment. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275-76 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988). Barnes alleges two separate retaliations: the charging officers conspired to issue the disciplinary reports because he had filed several grievances, and Johnson, the Chairman of the Adjustment Committee, retaliated against him because he had won a civil judgment against her.

Because any viable claim must arise from retaliation, rather than a lack of due process, Barnes has no claim against the other members of the Adjustment Committee. Barnes alleges that they went along with Johnson, Cmplt. ¶18 at 6-D, which may have been neglect of duty but not

4

retaliation. He has no claim against those defendants who merely upheld the Adjustment Committee's decision, Schonauer, Clark, Harry and Roos. Nor does he have a claim against Rosa Espinosa for allegedly failing to investigate the charges against him. (Even if Barnes could raise a due process claim, a prisoner has no constitutional right to a prehearing investigation. *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1996)). That leaves King, Cole-Carter and Eskridge, who charged Barnes with the disciplinary violations, McBride, who allegedly conspired with them, and Johnson, the Adjustment Committee Chairman.

Obviously, discipline initiated by a correctional officer with whom a prisoner has had a dispute need not be retaliation. A complaint states a claim for retaliation only if it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman*, 226 F.3d at 573 (*quoting Cain*, 857 F.2d at 1143 n. 6). The Seventh Circuit in *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985), stated that "alleging merely the ultimate fact of retaliation is insufficient," and found a five-month gap "greatly weakens any inference" that alleged act was retaliatory.

Barnes alleges that he "recently wrote several grievances" against defendant Sergeant McBride "and other officials" objecting to their placing him in "condemned" cells with plumbing and sanitation problems. Assuming for the moment that alleging that Barnes "recently" wrote the grievances adequately alleges that the retaliation was sufficiently close in time to the grievances that provoked it, Barnes' problem is that McBride did not write the disciplinary reports. The exhibits show the following:

(1) A disciplinary report written by "L. Cole-Carter" alleging that at 7:30 a.m. on September 10, 1998, Barnes committed the offenses of "disobeying a direct order," "failure to report" and "insolence." Barnes was convicted by the Adjustment Committee of "disobeying a direct order" and acquitted of "failure to report" and "insolence."

(2) A disciplinary report written by "Lt. P. King" alleging that at 9:30 a.m. on September 10, 1998, Barnes committed the offenses of "failure to report" and "disobeying a direct order." This disciplinary report was addressed in the same Adjustment Committee hearing and report as (1) above, and no separate conviction or punishment was imposed.

(3) A disciplinary report written by "H. Eskridge" alleging that at 11:30 a.m. on September 10, 1998, Barnes committed the offense of having excessive personal property that would not fit in his storage box. Barnes was acquitted by the Adjustment Committee of this charge.

Barnes alleges that McBride conspired with King to bring false charges against him and that King ordered Cole to file similar charges. Barnes alleges King also ordered Sergeant D. Johnson and Eskridge to charge Barnes with the personal property violation.

In both civil suits and criminal prosecutions, an allegation of conspiracy is a powerful tool, since co-conspirators are agents for each other and responsible for each other's actions. But a bare allegation of conspiracy does not give defendants and the court fair notice of a claim. A conspiracy requires an agreement, and a plaintiff alleging a conspiracy needs to allege who agreed with whom to do what. As the Seventh Circuit stated in *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999):

> A conspiracy is an agreement and there is no indication of when an agreement between Weiser and the other defendants was formed, what its terms were except that they somehow included a search of the premises occupied by the plaintiffs, or what Weiser's role was in the October 23 incident since he didn't participate in the search that day. The form and scope of the conspiracy are thus almost entirely unknown. This is a case of a bare allegation of conspiracy, and such an allegation does not satisfy Rule 8 [Fed.R.Civ.P.], either under our cases, [citations] or cases in the other circuits that have dealt with the issue. [citations]

In *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991), the court explained that while the requisite agreement need not be overt, the alleged acts must be sufficient to raise the inference of mutual understanding. Although that inference can be made when the alleged conspirators' actions are unlikely to have been undertaken without an agreement, at least "a whiff of the alleged conspirators' assent" must be apparent in the complaint.

Barnes' complaint lacks such allegations. With respect to charging him with the offenses, the complaint makes adequate allegations of retaliatory motive only against McBride. While Barnes alleges a conspiracy between McBride and King, no specifics of an agreement are given, and, assuming that the charges brought by King were exaggerated or false, there is no reason to suppose that King did not act out of his own malice toward Barnes.

To be sure, Barnes alleges a general conspiracy to retaliate against him:

> That certain Defendants entered into a conspiracy to retaliate against Plaintiff (while certain other Officials/Officers seized the opportunity to retaliate against plaintiff) for exercising his Right's [sic] to the legal process (filing grievances/civil complaint)

6

> given his overall opposition to the unconstitutional/illegal conditions of confinement he's being forced to endure as oppose to [sic; Barnes appears to mean "with respect to"] his incarceration at Stateville C.C.
>
> *********
>
> Understand, said retaliation against Plaintiff Barnes has been an ongoing process over many years and is thrust upon Plaintiff in untold forms. Moreoften [sic] than not same occures [sic] when the particular Official/Officer has control over Plaintiffs person or some penological process (adjustment committee, grievance process, ect. [sic]) dealing with his paperwork. On occasion an Official/Officer has enlisted the assistance of others concerning said retaliation.

Cmplt. ¶4 at 6. These vague allegations essentially ask the court to infer that everything unpleasant that happens to Barnes is attributable to somebody's retaliation. This neither sufficiently alleges retaliatory motive on the part of the charging officers nor a conspiracy that would permit Barnes to impute McBride's alleged retaliatory motive to them. Barnes may not use vague allegations of conspiracy and retaliation in order to bring suit over inconveniences and discomforts that are not of constitutional dimension.

### (B) Adjustment committee chairman

Barnes also alleges that the Chairman of the Adjustment Committee, A. Johnson, retaliated against him because he had previously won a judgment against her. An impartial decisionmaker is a requirement of due process of law. *See, e.g., Henderson v. United States Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994). Nevertheless, because Barnes' punishment did not rise to the level of constitutional concern, Barnes has no claim under Due Process Clause. Barnes only has a claim if Johnson convicted him out of retaliation.

Barnes' retaliation claim against Johnson faces three obstacles. First, Johnson was only one of three members of the Adjustment Committee and incapable of retaliating against Barnes without the concurrence of at least one other member. Barnes alleges that the other two members acquiesced in whatever Johnson decided. While this might meet the objection as a matter of pleading, it would be unprovable unless another member made the unlikely admission that she abdicated her responsibility to judge the case. Second, Barnes has not alleged the requisite

chronology, as he does not state when he sued Johnson, or when judgment was entered against her. Depending on the facts, this might be cured by amendment.[4/] But the third barrier is decisive.

Barnes was charged with six offenses: three charged in the disciplinary report written by Cole-Carter, two in the disciplinary report written by King, and one in the disciplinary report written by Eskridge. A supposedly vindictive Johnson convicted Barnes of only one offense, DR 403, "disobeying a direct order." This violation carried a maximum penalty of three months in segregation, 20 Ill. Adm. Code § 504, Table A, but Barnes was sentenced to one month. Retaliation is simply not a reasonable inference from these facts. A plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Henderson, supra*, 196 F.3d at 846.

The court accordingly dismisses this action under 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. If Barnes believes that he can state a claim against one or more of the defendants, consistent with the principles explained in this order, he may file a motion for reconsideration, together with an amended complaint for the court's consideration, within thirty days of the date of this order.

IT IS SO ORDERED.

_____
David H. Coar, Judge
United States District Court

DATED: APR 2 - 2001

---

[4/] On July 7, 1997, this court entered judgment in Barnes' favor and against Johnson in *Barnes v. Ramos*, No. 94 C 7541, aff'd, *Barnes v. Ramos*, No. 97-2929, 2001 WL 87470 (7th Cir. 2001) (unpublished). If this is the judgment to which Barnes refers, it would have been too distant in time from the Adjustment Committee hearing -- fourteen months -- to support a claim of retaliation. *See Benson v. Cady, supra*; *Burton v. Nelson*, No. 95 C 6434, 1998 WL 46900(N.D.Ill. 1998) (Gettleman, J.)(when alleged act of retaliation came approximately five months after plaintiff's first complaint of racial discrimination and four weeks after his last, retaliation would not be inferred).

8